Thank you, Your Honor. My name is Tom Watson. I represent Jose or Joe Cavazos. Mr. Cavazos was tried in the District Court for the Northern District of Texas along with three other defendants for the felony offense of conspiracy to deliver marijuana. Three of the four defendants had been arrested sometime during this alleged conspiracy in possession of significant amounts of marijuana. Mr. Cavazos was not one of these. Mr. Cavazos' only arrest was for less than two ounces of marijuana despite the fact that his home was searched on one or more occasions. The evidence against Mr. Cavazos consists of corroborated statements of persons either convicted or are promised immunity from prosecution for felony offenses. Most of this testimony consisted of conclusions that Joe Cavazos was removing marijuana from automobiles and vehicles. When asked for details about this, I don't believe any Mr. Cavazos remove a bumper, tire, or gas tank from a vehicle and extract marijuana from this vehicle. The testimony generally was that the witness saw what the witness believed was marijuana stacked in the automobile shop in place that the witness concluded Joe must have removed it from a vehicle. Example of the type of testimony is that of Fernando Landos who testified that Daniel's brother picked up a car from him at Motel 6 in Abilene. The testimony was he knocked on the door, took a step in, and I gave him the keys and he left. This was a 4 a.m. and this identification is inefficient to establish any element of the conspiracy. There's no evidence that Landros had any other connection with Mr. Cavazos. The evidence is that the three other defendants did have several convictions or incidents in which they were charged with or found in the possession of marijuana. There's no such incident against Mr. Cavazos. We therefore believe that the evidence is insufficient to convict Mr. Cavazos of the conspiracy charge of possession of more than 100 grams or 100 kilograms of marijuana. In the event that this court should find there is sufficient evidence to find or believe that Mr. Cavazos did in fact commit the offense, we would request that this case be remanded for re-sentencing because there were two pre-sentence reports, the second one prepared after the government objected to the first. We believe that the correct sentence in this case should have been pursuant to the first PSR of 60 to 72 months. Thank you very much for your time. Thank you, Mr. Watson. Mr. Blizzard. Thank you, Your Honor. Representing Mr. Rodriguez, we have three points we request the court to look at in this case. We believe there's insufficient evidence. We believe that the trial court should have severed Mr. Rodriguez's case out from the other defendants and we believe the trial court erred in including a lesser-included offense. Of both 50 to 100 kilograms and less than 50 kilograms. Mr. Flores is the only witness to testify to tie Mr. Rodriguez into the conspiracy. He does this by quoting another conspirator, Travis Longoria. Mr. Flores's testimony was ultimately very contradictory, very conclusive. Mr. Watson alluded to the conclusory testimony that comes from Mr. Flores. That is the only witness that ties Mr. Rodriguez into the conspiracy and there was no way a rational jury could believe his testimony after he had been impeached and found to be lying on several occasions while on the stand. Additionally, the lesser-included offense, just to touch on a couple of things, the government talks about the Schmuck case and that it implies that a prosecutor can request a lesser-included offense, however, subsequent Fifth Circuit cases, in 1993, the Stafford case, the Estrada case in 1998, all say that it is for the defendant. The defendant is entitled to forego a lesser-included offense and that's been cited through several Fifth Circuit case precedents. Now, at one point in the proceeding, you were in favor of having the lesser-included offense. Yes, sir. And so what happened is we prepared a charge. I consulted with my client. He decided not to go with it because we had to prepare a written charge in advance. And so that's the other point is that we bring this written charge to the trial court. The trial court thinks about it, says, okay, maybe I'll give it to you. And I said, well, the judge actually spoke with my client. He doesn't want it anymore. We withdraw it. The U.S. attorney never prepares a charge on a lesser-included offense. The court doesn't adopt the defendant's charge. It creates its own charge. And interestingly enough, the court also applies a lesser-included to every defendant. It doesn't just do it to my client, which was the only one who by the elements test and the evidence standards would have qualified for a lesser-included offense. And so I believe that he, the court wrongfully included him in, included the lesser-included. I believe the United States cases, they cite Mays and Young. And those cases are not telling for this court because those cases simply go into the fact that the lesser-included request is reviewed for plain error if it's not brought up. All right. Thank you. Thank you, Your Honor. Mr. Lindgren, you've saved time for rebuttal. Yes, sir. Thank you. Mr. Wilhelm. May it please the Court, Kevin Wilhelm Pring on behalf of Travis Longoria. What I wish the Court to consider today is the point that insufficient evidence was presented at trial to prove Travis Longoria was part of the conspiracy to which he was indicted. The government's case focused on the acquiring, possessing, and transporting marijuana from Mexico by a gentleman named Fabricio Perez through Del Rio and El Paso. No evidence connected Travis to Perez. There was no direct or circumstantial evidence that connected Travis to Perez in any such way. The only evidence that was presented in which Travis was part of any transportation of marijuana was through Mr. Flores, which both my co-counsel have already indicated was a witness whose testimony was highly contradictory. It was used through the government agreement not to indict him, and thus there's only circumstantial evidence. A mere scintilla, which connected Travis to any drug conspiracy for which the government was trying to present his case. Travis was connected to this through his father, Daniel Longoria. Travis is his son. He's going to have a connection with his father. Equal evidence presented at the trial showed that Travis Longoria possessed and sold marijuana by purchasing same from a supplier in Lubbock. That was an admission of Travis Longoria. It was evidence through his phone records, and it was evidence through the packaging of marijuana, which was discovered at his house, approximately 3.4 pounds. And that's supported by the Fifth Circuit's opinion in the United States v. Ortega-Reyna at 148 F. 3rd, 540 and 543. The government's theory regarding the number or quantity of witnesses and or exhibits does not equate to sufficient evidence of guilt. Quantity doesn't equal quality. I can get a metal tin and I can fill it with cow manure, and no matter how much cow manure I put in there or no matter how much cow manure I spread on my shoes, it does not equal shoe polish in any form or fashion. It can never equal shoe polish. Quantity doesn't equal quality. The government's case is based upon a quantity of evidence which they presented at trial, but none of that quantity was sufficient to find Travis guilty. Furthermore, the government can't broaden the scope of his case at trial, U.S. v. Adams. The government has attempted to combine unrelated events and situations into something for which it is not. Thank you. All right, thank you, Mr. Horton. Mr. Kretzer? Good morning, Your Honor. Seth Kretzer for Appellant Daniel Longoria. I have three points to make. The first are really intermediate conclusions, and they're somewhat related to those that the prior counsel have addressed. The first one I'd like to talk about is the impact of Fabrizio Perez, also known by Fabian. In the prosecutor's brief, he says that I bring or all of us bring excessive emphasis, I think is his word, on the import of Mr. Perez, who, of course, we allege is the key man. We would argue, Your Honor, that the sufficiency here is very nuanced. We would ask you to look at the testimony of Agent Billy Bloom. He's the undercover agent who went to speak to Longoria before he ultimately confronted him after divulging his cover. And he was trying to get Mr. Longoria interested in that Mr. Bloom said we can do deals down in Del Rio. And Mr. Longoria is like, oh, no, that's Mr. Perez's territory. I can't do that. We would ask you to look at the testimony of Agent Patterson. This is the agent who actually knew Mr. Longoria, Daniel Longoria, somewhat socially before, and then tried to facilitate some phone calls back earlier on when Mr. Longoria was actually cooperating. And while they were able to facilitate phone calls between the two, they were never actually able to get, the agents were not, a marijuana delivery intercepted from Mr. Perez. We would argue, if anything, he shows different key men with their own different conspiracies. It struck me that all roads seem to go to Abilene Automotive. Yes, Judge. Many roads do ultimately go to Abilene Automotive. But the question, of course, when you have, and this might more merge into our second point, is whether or not the suppliers were coming from, whether or not these suppliers communicated with each other. There's no doubt that what Mr. Daniel Longoria did, and we would argue Judge Higginbotham ultimately corresponds to much lower quantities, is the El Paso Juarez thing. That's where he was always sending folks down. There was this Mennonite individual they repeatedly met with. That's very different than the much larger quantities, Judge, that we would argue were over in Mr. Perez's territory. So our first argument, of course, would be that we don't think there was conspiratorial intent, certainly secondarily for the quantity amount alleged. But third and most importantly, Judge Higginbotham, if anything, there were two separate conspiracies, of which, of course, you would say is yet an alternative grounds upon which this Court— —that the connecting link that travels against your suggestions of separateness is Abilene Automotive. Well, Judge, I think that shows the difference between correlation and causality. There may have been packages that ultimately were sent or even unpacked by Mr. Cavazos at Abilene Automotive, and that certainly was Mr. Daniel Longoria's place of business. And even if that was enough to show one spoke of a conspiracy, I don't think that serves to distinguish the fact there were necessarily two different hubs. And where this becomes most important, Judge Higginbotham, of course, is with regards to the quantities that are ascribed to sentencing. The way that my client's sentencing rubric comes—actually, there are different standards, of course. It's a preponderant standard versus—understanding all that. The problem, of course, is that even if we were to prevail on even one two-level movement under the guidelines, so underneath that 1,000-kilogram trigger, it would result at the high end of the lower guideline range, 68 months, off my client's sentence. I'll go into this in a little bit more detail if I have time. In rebuttal, Your Honor, I would argue, just in my quick summation, that those are two related concepts that I think, like I said at the beginning, were two intermediate conclusions, ultimately lead to the ultimate conclusion, which we would ask you for a sentencing relief. All right. Thank you, Mr. Crutcher. You've saved time for rebuttal. Mr. Portugal. May it please the Court, Brian Portugal for the United States. I will begin with sufficiency if the Court does not direct me otherwise. There are four appellants in this case. There is how I will frame them. The father, Daniel Longoria, the son, Travis Longoria, Daniel's brother, Joe or Jose Cavazos, and the employee of Abilene Automotive, David Rodriguez. With respect to Daniel Longoria, the evidence is pretty clear that he was at the top of the conspiracy, arranged for imports of marijuana from sources of supply in Mexico. With respect to Travis, the son, the evidence is likewise clear that he dealt drugs. He obtained those drugs from his father, sometimes through David Rodriguez, his father's employee. With respect to Mr. Cavazos, the evidence at trial was, in short, that he participated in breaking down vehicles that had smuggled marijuana into the Abilene area. And finally, with respect to Mr. Rodriguez, the evidence at trial was that he stored marijuana for Mr. Daniel Longoria and, in some cases, farmed it out to Travis for resale. With respect to Daniel Longoria's sentencing arguments, first, Your Honors, with respect to his argument that anything before his 2009 conviction should not be included as relevant conduct, that argument is simply refuted by the guideline and the guideline commentary that any conduct that is charged in a federal indictment is to be treated as relevant conduct rather than criminal history. With respect to his argument that 143 pounds should not be attributed to him, first, Your Honors, that is reviewed under plain error. It is a factual finding that cannot constitute plain error, and furthermore, it was refuted by the trial testimony. With respect to his argument that the testimony of John Davis does not bear sufficient indicia of reliability to attribute 360 pounds of marijuana to him, he did not offer any rebuttal testimony to the PSR. The district judge heard the evidence at trial from Mr. John Davis, and therefore, he cannot prevail on that argument. Finally, or I'm sorry, next, with respect to the argument of David Rodriguez that the district judge should have severed his case out, first, his general allegation of spillover effect is insufficient under this Court's case law to allow him to prevail on that argument. And there was an instruction on that anyway, wasn't there? There was an instruction that the jurors were to consider evidence against the defendant separately, yes, Your Honor. Finally, with respect to Mr. Rodriguez's argument about the lesser-included offense, of course, the language of Rule 30 provides that any party may request an instruction. And furthermore, the genesis of the lesser-included offense doctrine is in the idea that if the prosecution's evidence fails as to an element but there is a lesser-included offense that misses that element but encompasses all the rest, the defendant should not escape conviction for the lesser-included offense. If the Court has no questions, I'm happy to see the remainder of my time rest on my brief and ask the Court to affirm the judgments below. All right. Thank you, Mr. Blitch. Thank you. Mr. Blizzard, you've set time for rebuttal. Thank you. To pick up somewhat where I left off in the discussion of the lesser-included offense, the government's cases effectively that they cite, they – neither of our briefs can conclusively cite to a law or a case that says that the prosecution is allowed or prohibited from requesting a lesser-included offense. However, to think about the meaning of this Court's prior rulings, what does it mean that the defendant is allowed to forego a lesser-included offense? What do you do with the text of the rule? Oh, the rule of? Either party can request. Well, Judge, because that rule, Rule 30, is about requesting jury instructions in general. And so certainly the United States is entitled to request a jury instruction, but it doesn't talk about the United States being able to request a lesser-included offense. So I believe that that applies to any jury instruction. And effectively what happens in this case is the government essentially and the trial court actually kind of hijack the lesser-included offense, which was first brought up by Rodriguez and then abandoned. But the court then kind of latches onto it, asks the U.S. Attorney's Office if they oppose it, and the U.S. Attorney's Office just kind of says, well, if that's what you want, Judge, so we don't have to deal with the appeal, then that's fine. So the U.S. Attorney's Office never even asked for a request for an instruction either. They certainly didn't write one. And so effectively there was no basis for the court to give it. And I think that's evident by the fact that the court did not apply an elements test and a facts test to determine if a lesser-included should apply to each defendant. The court just applied it broadly to all the defendants. All right. Thank you, Mr. Blumenthal. Thank you. Mr. Crutcher, you've saved time for rebuttal. First and foremost, I'd like to respond to the question Judge Higginbotham asked me in my opening, don't all rooves lead to Evelyn Automotive? And I think the answer, Judge Higginbotham, is that no. I would direct the court's attention to page 923 and then 925 of the record. That's the testimony of Mr. Stanley. Question, who was going to pay you for this November the 5th? Answer, Fabian. You do not remember what Daniel looks like. Answer, no, I do not. Most importantly, Judge Higginbotham, when you go to 925, that was a direct examination I just quoted. First question on cross-examination. Question, the government just said a moment ago that you did it for Daniel Longori, but that is not true. You did it for Fabricio. Correct? Answer, correct. It goes to our point, Your Honor, that Fabian and Daniel were not working in tandem here. They may have known each other. They may have spoken in the past. But we'd argue that at the minimum, these are separate hubs. That would be my first-level answer. Judge Higginbotham, I think where this becomes important, even if I'm not able to persuade the panel with regard to my sufficiency arguments, in this case you see a very similar set of conditions come into play at sentencing. I would ask the court to look with regard to the procedural dimension here. I'll bear in at the beginning of that quantity about which probation originally confessed error and massively reduced the amount that was ascribed based on how often these deliveries were made. What happened there, Judge Solis said at the beginning the prosecutor wanted specific offense characteristic. And he said, well, Ms. Fielden, I see that you have some evidence in your favor, but there's also some evidence going the other way, so I don't quite get there. So he didn't apply that specific offense characteristic. That objection to the PSR was overruled. But when it came to the disputed quantity amount, and, again, the reason this guideline is impactless, it doesn't take very much to get a two-level decrease, which is very significant. It's a lot at this high level of the guidelines. There what happened, Judge Higginbotham, was Judge Solis just said, well, and I quote this extensively in my brief, the correct amount you say is less, and it might well be. That's a direct quote. We would argue, Judge Higginbotham, that based on the objection that was made, that's not a sufficiently definite fact finding. It's one thing for a judge to adopt a PSR as revised as bearing the sufficient indicia of reliability. Here, this is a point of disagreement we have with the government. It is not true that Mr. Daniel Longoria did not contest, did not refute that fact. He actually objected and didn't just say it was less than you probation say is the oftenness with which this delivery was made, which they then agreed with. We said his testimony was so ambiguous, and they specifically looked at what that testimony was, that that amount quantity has to come off entirely. And it's our position that Judge Solis did not reject or accept that proposition one way or the other. With my rapidly dwindling time, although it's not an issue that applies directly to my defense, since I'm here on rebuttal, I'd like to bring up that point which Mr. Blizzard made, which is the issue on which a judge can instruct. And, Judge Smith, we understand the reading of the rule, but under the cases, this issue of where a judge can instruct on a lesser-included offense sui sponte. And Judge Solis even said at the charge conference, quote, I may be creating precedent here. He said, I understand usually it's a defendant who wants a lesser-included offense. We see this in murder trials where someone says it's all or nothing. And we look pretty extensively at this issue, and we're not able to find a case that definitively addresses that. So when you write the opinion, this might be an opinion. Actually, I'm way over my time, so I do apologize. I apologize. Your case is under submission, and we notice that all four counsel are appointed. And to each of you, we appreciate your willingness to take the appointment and appreciate your good work on behalf of your clients. That would be a service. Thank you. Next case.